# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### San Francisco Division

| | |
|---|---|
| AMANDA SCHWARTZ, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAMELBAK PRODUCTS, LLC, VISTA OUTDOOR INC., VISTA OUTDOOR SALES LLC,<br><br>Defendants. | Case No. ___25-656___<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

This case seeks relief for consumers who have been misled about the content of recycled plastic in CamelBak products, which are high-end water containers, including plastic water bottles. CamelBaks are marketed to runners, skiers, hikers, and other outdoor enthusiasts and command premium retail prices based, in part, on a widespread representation that some of the products' plastic is "Tritan Renew made with 50% recycled material." This representation is designed to, and does, appeal to consumers concerned with the sustainability of plastic, who seek to purchase products that use less virgin plastic. The representation, however, is misleading; a CamelBak water bottle purporting to comprise Tritan Renew plastic

"made with 50% recycled material" may in fact contain little to no recycled material at all. Tennessee-based chemical plastic recycler Eastman Chemical Company produces Tritan Renew according to a system known as mass balance, a methodology that allows companies to collect credits for recycling plastic and then apply those credits to the manufacture of various products, regardless of whether those products actually contain any recycled plastic. In other words, mass balance allows CamelBak to fool customers about the amount of recycled plastic CamelBak water bottles actually contain. This action seeks to recover, for consumers, the amount of the purchase price of CamelBak water bottles attributable to the promise that those products' plastic components are "Tritan Renew made with 50% recycled material."

## ALLEGATIONS OF FACT

1.      Defendant CamelBak Products, LLC, based in Petaluma, California, is a maker of "hydration solutions," including water-containment backpacks, coolers, water bottles, and drinkware.[1] CamelBak is referred to in this Complaint as "CamelBak." As a trade name, CamelBak is used with a trademark: CamelBak®.

---

[1] *See CamelBak*, https://www.camelbak.com/about/companyhistory.html (last visited Jan. 14, 2025); *Shop All CamelBak Gear*, CamelBak, https://www.camelbak.com/shop/ (last visited Jan. 14, 2025).

2.     The parent company of CamelBak is the publicly traded Vista Outdoor Inc. of Anoka, Minnesota, and its affiliate Vista Outdoor Sales LLC ("Vista"). Collectively, this Complaint refers to CamelBak and Vista as "Defendants" or "CamelBak."

3.     CamelBak manufactures and markets water bottles sold with blue stickers announcing that the bottles contain 50 percent recycled material.

4.     This promise of recycled materials is made without qualification and, by appearing on the bottles themselves, is necessarily seen by bottle purchasers.

5.     CamelBak makes this promise based on the bottles being made from "Tritan Renew made with 50% recycled material."

6.     The use of Tritan™ Renew materials also is highlighted on CamelBak's website describing water bottles.[2]

7.     Tritan™ Renew is a plastic product manufactured by Eastman Chemical Company, a Kingsport, Tennessee-based global specialty materials company, referred to in this Complaint as "Eastman."

---

[2] *See, e.g.*, *Eddy+ 20oz Bottle with Tritan™ Renew*, CamelBak, https://www.camelbak.com/shop/water-bottles/everyday/eddy-20oz-bottle-with-tritan-renew/CB-2466.html?dwvar CB-2466 color=Charcoal (advertising Eddy+ 20oz Bottle with Tritan™ Renew: "It just keeps getting better— the classic everyday Eddy®+ bottle is now made with Tritan™ Renew plastic, a 50% recycled material") (last visited Jan. 14, 2025).

8.    The representation that CamelBak's bottles contain 50 percent recycled material is referred to in this Complaint as the "Tritan Renew Promise."

9.    CamelBak water bottles marketed with the Tritan Renew Promise are referred to in this Complaint as the "Tritan Renew Bottles."

10.    Tritan Renew Bottles are marketed with the Tritan Renew Promise in order to appeal to consumers who are concerned about the use of virgin plastic in the products they purchase, and who seek to reduce their environmental footprint by purchasing less virgin plastic.

11.    Environmental concerns, such as reducing the use of virgin plastic, are especially prevalent among outdoor enthusiasts who are likely to purchase and use CamelBak products.[3]

12.    Consumers are willing to, and do pay more for, products that contain a higher percentage of recycled plastic and a lower percentage of virgin plastic.

13.    Consumers are willing to, and do, pay more for Tritan Renew Bottles marketed with the Tritan Renew Promise.

---

[3] For instance, one survey found that 87% of outdoor consumers "consider sustainability" when making purchases and 57% of those outdoor consumers are "willing to pay premium rates for sustainable goods." *See* Bobby Johnson, *A Check-In With Outdoor Consumers*, Inspira (Feb. 25, 2022), https://inspiramarketing.com/a-check-in-with-outdoor-consumers/.

CLASS ACTION COMPLAINT

14.    A consumer who sees the Tritan Renew Promise would reasonably believe that Tritan Renew Bottles contain 50 percent recycled material.

15.    The Tritan Renew Promise is designed to lead consumers to believe that Tritan Renew Bottles contain 50 percent recycled material.

16.    Plaintiff Amanda Schwartz is one such consumer. Plaintiff Schwartz purchased her Tritan Renew Bottles in reliance on promises CamelBak made about the Tritan Renew Bottles.

17.    Plaintiff Schwartz purchased two CamelBak Eddy+ Kids Insulated BPA-Free Bottle, 14oz water bottles for her children via Amazon.com. The bottles were advertised as being "made with Tritan Renew."[4] The image below depicts these representations in substantially identical form as Plaintiff Schwartz viewed them.

---

[4]*CamelBak  Eddy+  Kids  Insulated  BPA-Free  Bottle,  14oz*, Amazon, https://www.amazon.com/CamelBak-Eddy-Insulated-BPA-Free-Bottle/dp/B07VZ1167N?th=1 (last visited Jan. 14, 2025).

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



## CamelBak Eddy+ Kids 14 oz Water Bottle with Tritan Renew

An everyday sidekick to lunch boxes everywhere, the Eddy+ Kids water bottle is now made with Tritan Renew, a highly durable and lightweight plastic made with 50% recycled material. In addition to being a feel-good reusable, Eddy + Kids bottles are spill-proof when open and leak-proof when closed - no more soggy backpacks. Just bite to sip and close when finished. The easy carry handle and fun designs make hydrating fun on any adventure. Cap and bottle are odor and stain resistant, dishwasher safe, and free of BPA, BPS, and BPF. Tritan Renew is made using Polyester Renewal Technology, a recycling process that's more efficient than standard mechanical recycling, producing new material with less demand on finite resources. Fun, functional, sustainable. Recommended for ages 3+.

18.    The Tritan Renew Promise is false and misleading because Tritan Renew Bottles are unlikely to contain 50 percent recycled material. Instead, the plastic in Tritan Renew Bottles is manufactured by Eastman purportedly using a system called "mass balance."

19.    "Mass balance" is a certification and accounting system that allows companies like Eastman to collect credits for recycling plastic and then to apply those credits to the use of plastic materials in different products, regardless of how much recycled plastic those products actually contain, if they contain any at all.

20.    "Mass balance" means that a product made with Eastman's Tritan Renew, such as the Tritan Renew Bottles manufactured and marketed by CamelBak, may not contain any recycled plastic at all.

21.    Eastman operates a chemical plastic recycling plant in Tennessee that uses methanol, heat, and pressure to dissolve plastic waste into basic chemicals, which are then mixed with other materials to create new plastic products.

22.    Mass balance is not unique to the plastics-recycling arena; industries including palm oil, coffee, and textiles have used mass balance to market products made from mixed materials, such as sustainably sourced and non-sustainably sourced raw materials, as more environmentally friendly (or "green") than they actually are.

23.    Mass balance allows Eastman to tally the building-block molecules that it distills from recycling plastic and list them in a materials inventory, receive recycling "credit" for those molecules, and then assign those credits to what it manufactures, regardless of any actually recycled materials in what has been manufactured.

24.    Indeed, the mass-balance protocol allows Eastman to assign all or most of these "credits" to a single product, regardless of whether that product actually contains recycled materials.

25.    Based on this "credit" system, Eastman represents that Tritan™ Renew contains "up to 50 percent recycled plastic"—even if a batch has minimal or no recycled material in it—so long as *something* that Eastman manufactured contains chemical building blocks originating in recycled plastic.

26.    Even if "mass balance" were a sufficient system for ensuring the amount of recycled plastic in particular products—it is not—the process is not transparent. Eastman's "mass balance" process is overseen by an organization that certifies mass balance accounting, the International Sustainability and Carbon Certification, or I.S.C.C., based in Cologne, Germany.

27.    The I.S.C.C. purports to be an association of corporations and nonprofit organizations, but six of the organization's seven board members are

appointed from the chemical or fuel industry, including Eastman itself, along with Dow Chemical and BP p.l.c.

28.    Environmental watchdogs have criticized the I.S.C.C. as a "system of self-certification" made up of members of large-scale chemical corporations.[5]

29.    Publicly available reports state that Eastman's Tennessee recycling plant has received inputs of mixed waste plastic, and has produced outputs of various chemical compounds like esters, glycols, and copolyesters. Those reports, however, do not enumerate the amounts of these compounds produced or which products they ended up in.

30.    The I.S.C.C. itself admits that the mass balance methodology cannot guarantee that any amount of recycled content has been incorporated into a finished good.[6]

31.    The Federal Trade Commission ("FTC") itself has questioned whether manufacturers should be making recycling claims based on mass balance accounting.[7]

---

[5] See Julie Creswell, et al., *Is Your Water Bottle Really Made From Recycled Plastic?*, The New York Times (Aug. 26, 2024), https://www.nytimes.com/2024/08/26/business/energy-environment/tritan-renew-plastic-bottles-recycled.html.
[6] *See id.*
[7] *See id.*

32.    A product marketed as sustainable or recyclable, as the Tritan Renew Bottles are, can command a higher price than a product that is not marketed with such claims.[8]

33.    CamelBak is aware that consumers seek out and rely on such claims.

34.    For instance, a survey of 9,000 consumers across North America, South America, and Europe published in 2023 found that 77% of consumers are likely to purchase a product made with sustainable materials.[9]

35.    A 2019 study conducted by Coleman Parkes Research on behalf of Accenture surveyed 1,500 consumers in seventeen cities throughout the United States and found that 47% of consumers surveyed expressed a desire to conduct business with retailers that are environmentally conscious.[10]

36.    The desire for sustainable products is especially pronounced among younger consumers; a study from the International Trademark Association from 2018 found that 57% of internet users ages 18 to 23 were seeking environmentally sustainable products.[11]

---

[8] *See id.*

[9] *Buying Green Report*, Trivium Packaging at 16 (2023), https://www.triviumpackaging.com/media/pe5hfxsp/2023buyinggreenreport.pdf.

[10] Lucy Koch, *Sustainability Is Factoring Into 2019 Holiday Purchases*, eMarketer (Oct. 14, 2019), https://www.emarketer.com/content/sustainability-is-factoring-into-2019-holiday-purchases?_ga=2.170357734.731468461.1617378067-462530432.1615825431.

[11] *Id.*

37.    "Using a reusable water bottle is a common practice for 69% of Gen Z."[12]

38.    CamelBak is among the top-selling reusable water bottle brands.

39.    The FTC has determined that unqualified general environmental benefit claims, such as recyclability representations, "imply certain specific environmental benefits."[13] For that reason, the FTC has warned companies not to use unqualified claims due to its determination that "it is highly unlikely that they can substantiate all reasonable interpretations of these claims."[14]

40.    A consumer who purchases a Tritan Renew Bottle pays for the promise that the product *does* contain 50 percent recycled material, not for the ***possibility*** that the product *might* contain up to 50 percent recycled material.

41.    A reasonable consumer who purchases a Tritan Renew Bottle with the promise that the product contains 50 percent recycled material would be unlikely to pay the high price that CamelBak demands if that consumer knew that the purchased product might not, and probably does not, contain 50 percent recycled material.

---

[12] Emily Phally, *Reusable bottles aren't just accessories*, Daily Trojan (Sept. 26, 2023), https://dailytrojan.com/2023/09/26/reusable-bottles-arent-just-accessories/.

[13] *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures*, Federal Trade Commission (Apr. 2, 2019), https://www.ftc.gov/news-events/press-releases/2019/03/ftc-sends-warning-letters-companies-regarding-diamond-ad; *see also* FTC Green Guides, 16 C.F.R. § 260.4(b) (2012).

[14] *Id.*

42.    A consumer who purchases a product made with Tritan Renew, such as the Tritan Renew Bottles manufactured and marketed by CamelBak, has no way to determine how much recycled material was actually used in the product.

43.    Nowhere does CamelBak's marketing of the Tritan Renew Bottles disclose the "mass balance" accounting system or the fact that the Tritan Renew Bottles, which are advertised as containing 50 percent recycled material, are unlikely to contain 50 percent recycled material and may in fact contain no recycled material.

44.    When an article in *The New York Times* revealed the use of "mass balance" accounting for the plastic in the Tritan Renew Bottles, CamelBak said it would stop using the unqualified statement that Tritan Renew Bottles contain 50 percent recycled material, presumably in an effort to cure the consumer deception.

45.    CamelBak got caught misrepresenting the recycled-material content of its Tritan Renew Bottles. CamelBak's belated correction to the marketing comes too late for the thousands of consumers who purchased Tritan Renew Bottles with the Tritan Renew Promise.

46.    Consumers who purchased Tritan Renew Bottles with CamelBak's misrepresentations paid a higher price for those products than they otherwise would have, or even bought the products when they otherwise would not have.

47.    Consumers who purchased Tritan Renew Bottles with the Tritan Renew Promise are entitled to, at a minimum, a refund of the portion of their purchase price attributable to the Tritan Renew Promise.

48.    **WHO:** CamelBak represented that the Tritan Renew Bottles would actually be 50% made from recycled material. This is a material representation to consumers about the components that make up the product that was not revised by any third-party retailer.

49.    **WHAT:** Despite CamelBak's representation, the Tritan Renew Bottles may in fact contain little to no recycled material at all. Thus, CamelBak's conduct deceived Plaintiff and Class Members into believing that the Products are 50% made from recycled material, when they are not. CamelBak knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class Members in making their purchasing decisions, yet they continued to pervasively market the Tritan Renew Bottles in this manner.

50.    **WHEN:** CamelBak made material misrepresentations during the putative class periods, *see infra* ¶ 68, including prior to and at the time Plaintiff and Class Members purchased the Tritan Renew Bottles, despite having knowledge that the Product was not actually 50% made from recycled material. Here, Plaintiff

purchased two Tritan Renew Bottles – on July 30, 2023, and October 10, 2023, respectively.

51.    **WHERE:** CamelBak's marketing representation was uniform and pervasive, appearing on labels on the Tritan Renew Bottles themselves, available in various stores across the country, and on its online marketing materials, including descriptions on third-party retailer websites such as Amazon.com.

52.    **HOW:** CamelBak made the material misrepresentation regarding the make-up of the Tritan Renew Bottles through labeling and website statements.

53.    **WHY:** CamelBak made the material misrepresentations detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Tritan Renew Bottles on the basis of the representation, the effect of which was that CamelBak profited by selling the Tritan Renew Bottles to hundreds of thousands of consumers.

54.    **INJURY:** Plaintiff and Class Members purchased, or otherwise paid more for than they would have for, the Tritan Renew Bottles based on the promise that those Tritan Renew Bottles were 50% recycled material, and otherwise would not have acted in the same manner if they knew that the "50% made from recycled material" representation was false.

1

## **PARTIES, JURISDICTION, AND VENUE**

2    55.    This Court has original subject-matter jurisdiction over this proposed

3  class action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act

4  ("CAFA").  There are more than 100 members in the proposed class.

5    56.    Plaintiff Schwartz is a citizen of Cardiff, California and consents to

6  this Court's jurisdiction.

7    57.    At all times herein, Plaintiff Schwartz was and is an individual

8  consumer over the age of 18.

9    58.    Defendant CamelBak is a Delaware corporation headquartered in

10  Petaluma, California.

11    59.    Defendant Vista Outdoor Inc. is a Delaware corporation headquartered

12  in Anoka, Minnesota.

13    60.    Defendant Vista Outdoor Sales LLC is a Delaware corporation

14  headquartered in Anoka, Minnesota.

15    61.    The amount in controversy exceeds the sum of $5,000,000, exclusive

16  of interest and costs.

17    62.    This Court has personal jurisdiction over Defendants in that they

18  regularly conduct and transact business in California, purposefully avail themselves

19

20

of the laws of California, and have marketed the Tritan Renew Bottles with the Tritan Renew Promise in California.

63.    Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct occurred within this District, including the dissemination of false and misleading marketing and advertising regarding the nature of the Tritan Renew Bottles and sales of the Tritan Renew Bottles.

64.    Plaintiff Schwartz purchased a Tritan Renew Bottle twice in 2023 via Amazon.com. Plaintiff Schwartz purchased these Tritan Renew Bottles in a typical setting for individual use.

65.    When she purchased each Tritan Renew Bottle, Plaintiff Schwartz saw and relied upon the Tritan Renew Promise.

66.    Absent the Tritan Renew Promise, Plaintiff Schwartz would not have paid a price premium for her Tritan Renew Bottle and likely would have chosen another water bottle actually made from a guaranteed amount of recycled plastic.

## CLASS ALLEGATIONS

67.    Plaintiff Schwartz re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

68.    Plaintiff Schwartz brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals within the United States (the "Class"), defined as follows: all consumers who purchased Tritan Renew Bottles with the Tritan Renew Promise within the United States during the applicable statute of limitations period (the "Class Period") and until the date of class certification.

69.    Included in the Class, to the extent necessary, is a subclass of all persons who purchased the Tritan Renew Bottles labeled with the Tritan Renew Promise in California during the Class Period (the "California Subclass").

70.    Excluded from the Class are (1) Defendants, any entity or division in which either Defendant has a controlling interest, and Defendants' legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

71.    There are substantial questions of law and fact common to all members of the Class, which will predominate over any individual issues. These common questions of law and fact include, without limitation:

(a)    Whether Defendants are responsible for the marketing at issue;

(b)    Whether the marketing of the Tritan Renew Bottles with the Tritan Renew Promise was unfair, misleading, false, deceptive, fraudulent, and/or unlawful;

(c)    Whether the Tritan Renew Promise created a warranty regarding the quality and composition of the Tritan Renew Bottles;

(d)    Whether consumers reasonably would have believed that the Tritan Renew Promise meant each Tritan Renew Bottle contained 50 percent recycled material; and

(e)    Whether Defendants' conduct injured Plaintiff Schwartz and Class Members.

72.    Plaintiff Schwartz's claims are typical of the claims of the Class. Plaintiff Schwartz is a member of a well-defined class of similarly situated persons, and the members of the Class were similarly affected by Defendants' conduct and are owed the same relief, as alleged in this Complaint.

73.    The precise number of the Class members and their identities are unknown to Plaintiff Schwartz at this time but may be determined through discovery.

74.    Plaintiff Schwartz will fairly and adequately protect the interests of the Class and has no interests that are antagonistic to the claims of the Class. Plaintiff Schwartz will vigorously pursue the claims of the Class and Subclass.

75.    Plaintiff Schwartz has retained counsel who are competent and experienced in consumer protection litigation, including class actions relating to false advertising. Plaintiff Schwartz's counsel have successfully represented

plaintiffs in complex class actions and currently represent plaintiffs in similar complex class action lawsuits involving false advertising.

76.    A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of Plaintiff Schwartz and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

77.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class Members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually, and the disposition of this case and as part of a single class action will benefit the parties and reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiff Schwartz's and the Class Members' claims together is manageable.

78.    No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

79.    The prerequisites to maintaining a class action for equitable relief are met. By affixing the Tritan Renew Promise uniformly to the Tritan Renew Bottles on every, Defendants acted or refused to act on grounds generally applicable to the Class, making appropriate relief with respect to the Class as a whole.

80.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for CamelBak. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

81.    Plaintiff Schwartz knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

## CAUSES OF ACTION

### COUNT I
**Unfair and Deceptive Acts and Practices
in Violation of the California Consumer Legal Remedies Act
(On Behalf of the California Subclass)**

82.    Plaintiff Schwartz incorporates by reference and realleges herein all paragraphs alleged above.

83.    This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

84.     Plaintiff Schwartz and other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought CamelBak's Tritan Renew Bottles for personal, family, or household purposes.

85.     Plaintiff Schwartz, the other members of the California Subclass, and Defendants have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

86.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and that did result in, the sale of goods to consumers.

87.     As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiff Schwartz and the other members of the California Subclass that the Tritan Renew Bottles, uniformly, contain 50 percent recycled materials.

88.     As a result of engaging in such conduct, Defendants have violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

89.     CLRA § 1782 NOTICE. On October 30, 2024, a CLRA demand letter was sent on behalf of Plaintiff Schwartz to CamelBak via certified mail, which

1   provided notice of Defendants' violation of the CLRA and demanded that within

2   thirty (30) days from that date, CamelBak correct, repair, replace, or otherwise

3   rectify the unlawful, unfair, false, and/or deceptive practices complained of herein.

4   The letter also stated that if CamelBak refused to do so, a complaint seeking

5   damages in accordance with the CLRA would be filed. CamelBak received the letter

6   on behalf of Plaintiff Schwartz, but Defendants have failed to comply with the letter.

7   Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Schwartz, on

8   behalf of herself and the California Subclass, seeks compensatory damages,

9   punitive damages, injunctive relief, and restitution of any ill-gotten gains due to

10  Defendants' acts and practices.

11                              **COUNT II**
                    **Violations of California's False Advertising Law**
12                      **(On Behalf of the California Subclass)**

13      90.    Plaintiff Schwartz incorporates by reference and realleges herein all

14  paragraphs alleged above.

15      91.    As alleged more fully above, Defendants have falsely advertised the

16  Tritan Renew Bottles with the Tritan Renew Promise.

17      92.    At all material times, Defendants engaged in a scheme of offering the

18  Tritan Renew Bottles with the Tritan Renew Promise for sale to Plaintiff Schwartz

19  and the other members of the California Subclass.

20
                                    22

1    93.    The Tritan Renew Promise and Defendants' non-disclosures of mass

2  balance accounting and the reality of recycled content in the Tritan Renew Bottles

3  detailed above constitute false and misleading advertising, and therefore constitute

4  a violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code

5  § 17500 *et seq*.

6    94.    Said advertisements and inducements were made within the State of

7  California and come within the definition of advertising contained in the FAL, in

8  that such promotional materials were intended as inducements to purchase the

9  Tritan Renew Bottles and are statements disseminated by Defendants to, and

10  intended to reach, Plaintiff Schwartz and the other members of the California

11  Subclass. Defendants knew, or in the exercise of reasonable care should have

12  known, that these representations were misleading and deceptive.

13    95.    The above-described acts of Defendants did deceive and were likely to

14  deceive reasonable consumers, including Plaintiff Schwartz and the other members

15  of the California Subclass, by obfuscating the nature and sourcing of the Tritan

16  Renew Bottles, in violation of the "misleading" prong of the FAL.

17    96.    Plaintiff Schwartz and the other members of the California Subclass

18  have suffered injury-in-fact and have lost money or property as a result of

19

20

Defendants' violations of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*

97.    Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, Plaintiff Schwartz and the Class seek an order of this Court that includes, but is not limited to, requiring CamelBak to provide restitution to Plaintiff Schwartz and the other members of the California Subclass; cease its unlawful and deceptive acts; and pay the attorney fees and costs of Plaintiff Schwartz and the California Subclass.

**<u>COUNT III</u>**
**Violation of California's Unfair Competition Law**
**(On Behalf of the California Subclass)**

98.    Plaintiff Schwartz incorporates by reference and realleges herein all paragraphs alleged above.

99.    By committing the acts and practices alleged herein, Defendants have violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclass as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

100.    Defendants have violated the UCL's proscription against engaging in ***unlawful*** conduct as a result of violations, as alleged above, of the CLRA (Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9)) and the FAL (Cal. Bus. & Prof. Code §§ 17500 *et seq.*).

24
CLASS ACTION COMPLAINT

101. Defendants' acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

102. As more fully described above, Defendants' misleading marketing and advertising of the Tritan Renew Bottles was likely to deceive reasonable consumers. Indeed, Plaintiff Schwartz and the other members of the California Subclass were deceived regarding the "sustainable" qualities of the Tritan Renew Bottles, because Defendants' marketing and advertising misrepresent or omit the true facts concerning the benefits of the Tritan Renew Bottles. Those acts are fraudulent business practices.

103. Defendants' acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

104. Plaintiff Schwartz and the other members of the California Subclass suffered injury by virtue of buying the Tritan Renew Bottles that they would not have purchased, or would not have paid the requested prices for, absent Defendants' unlawful, fraudulent, and unfair marketing and advertising.

105. There is no benefit to consumers or competition from deceptively marketing products like the Tritan Renew Bottles, which purport to contain 50 percent recycled materials when these unqualified promises are false.

106.    Plaintiff Schwartz and the other members of the California Subclass had no way of reasonably knowing that the Tritan Renew Bottles they purchased were not as marketed or advertised. Thus, they could not have reasonably avoided the injury each of them suffered.

107.    The consequences of Defendants' conduct as described above outweigh any justification, motive, or reason therefore, particularly considering the available lawful alternatives that exist in the marketplace, and such conduct is immoral, unethical, and unscrupulous, offends established public policy, and is substantially injurious to Plaintiff Schwartz and the other members of the California Subclass.

108.    Pursuant to California Business and Professional Code § 17203, Plaintiff Schwartz and the members of the California Subclass seek an order of this Court that, *inter alia*, requires Defendants to provide restitution to Plaintiff Schwartz and the other members of the California Subclass; disgorge all revenues obtained as a result of violations of the UCL; cease their unlawful and deceptive acts; and pay the attorneys' fees and costs of Plaintiff Schwartz and the California Subclass.

## COUNT IV
## BREACH OF EXPRESS WARRANTY
## (on behalf of the Class)

109.    Plaintiff Schwartz realleges and reincorporates by reference all paragraphs alleged above.

110.    Plaintiff Schwartz and Class Members formed a contract with Defendants at the time Plaintiff Schwartz and Class Members purchased Tritan Renew Bottles.

111.    The terms of the contract include the promises and affirmations of fact made by Defendants through marketing and advertising the Tritan Renew Promise, as described above.

112.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Defendants and Plaintiff Schwartz and Class Members.

113.    As set forth above, Defendants purport through advertising and marketing to create an express warranty that the Tritan Renew Bottles contain 50 percent recycled material, without qualification.

114.    Plaintiff Schwartz and Class Members performed all conditions precedent to Defendants' liability under this contract when they purchased the Tritan Renew Bottles.

115.    Defendants breached the Tritan Renew Promise express warranty because despite Defendants' warranty that the Tritan Renew Bottles contain 50

percent recycled material, without qualification, the Tritan Renew Bottles do not generally contain 50 percent recycled material. Thus, the Tritan Renew Bottles do not conform to the Tritan Renew Promise, and did not conform to the Tritan Renew Promise at the time they were purchased.

116.   Plaintiff Schwartz and the Class Members would not have purchased the Tritan Renew Bottles, or would have paid less for or not purchased as many of them, had they known the true nature of the Tritan Renew Bottles.

117.   As a result of Defendants' breach of warranty, Plaintiff Schwartz and each Class Member suffered and continues to suffer financial damage and injury, and is entitled to all damages, in addition to costs, interest and fees, including attorney's fees, as allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Schwartz respectfully requests that the Court enter judgment in her favor and in favor of the California Subclass and the Class as follows:

A. An order certifying the proposed Class (and/or Subclass as deemed necessary); appointing Plaintiff Schwartz as representative of the Class (and/or Subclass as deemed necessary); and appointing Plaintiff Schwartz's undersigned counsel as class counsel for the Class (and/or Subclass as deemed necessary);

B.   A declaration that Defendants are financially responsible for notifying Class members of the pendency of this suit;

C.   Monetary damages for members of the Class pursuant to California Civil Code § 1780;

D.   Monetary damages and statutory damages in the maximum amount provided by law;

E.   Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

F.   Injunctive relief;

G.   An order awarding Plaintiff Schwartz and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

H.   Any further relief that the Court may deem appropriate.

## **<u>JURY TRIAL DEMANDED</u>**

Plaintiff Schwartz hereby demands a trial by jury.

CLASS ACTION COMPLAINT

DATED: January 17, 2024          Respectfully submitted,

**RICHMAN LAW & POLICY**

_____
P. Renée Wicklund (State Bar No. 200588)
535 Mission Street
San Francisco, CA 94105
Telephone: (718) 705-4579
rwicklund@richmanlawpolicy.com


*Attorney for Plaintiff Schwartz*
*and Proposed Class*